BENJAMIN B. WAGNER
United States Attorney
TODD A. PICKLES
ROSANNE L. RUST
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED
JUL 20 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15 - CR - 0139 JAM |
|---|---|
| Plaintiff, | VIOLATION: 18 U.S.C. § 371 (Conspiracy To Commit Bribery And To Commit Identity Fraud); 18 U.S.C. §§ 982(a)(2)(B) and 1028(b)(5) – Criminal Forfeiture |
| v. | |
| EMMA KLEM, | |
| Defendant. | |

# INFORMATION

COUNT ONE: [18 U.S.C. § 371 – Conspiracy to Commit Bribery And To Commit Identity Fraud]

The United States Attorney charges:

EMMA KLEM,

defendant herein,

1. Beginning no later than May 2013, and continuing through at least March 2015, in the County of Sacramento, State and Eastern District of California, and elsewhere, did knowingly and intentionally conspire with others known and unknown to commit bribery concerning programs receiving federal funds, in violation of Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2), and to commit identity fraud, in violation of Title 18, United States Code section 1028(a)(1).

2. At all relevant times, the California Department of Motor Vehicles (DMV) was a political subdivision and agency of the State of California that registered vehicles in California and licensed California drivers. The DMV also issued identification cards for individuals in California. The DMV was funded by vehicle registration and licensing fees paid by residents and licensees of the State of California. The DMV also received federal grants, including the following grant money:

| Fiscal Year (July 1 – June 30) | Total Approximate Amount of Federal Funds |
|---|---|
| 2011-2012 | $2,500,000 |
| 2012-2013 | $726,000 |
| 2013-2014 | $4,000,000 |
| 2014-2015 | $800,000 |

3. The DMV issued various classes of driver licenses, including Class A, Class B, and Class C, based primarily on the type of vehicle to be operated.

4. Class A and Class B California driver licenses (CDL) licensed a driver to operate a commercial vehicle in California. A Class A commercial CDL licensed a driver to operate motor vehicles weighing more than 26,001 pounds, including vehicles that tow trailers or more than one vehicle, and vehicles that transport hazardous waste. A Class B commercial CDL also licensed a driver to operate vehicles that weigh more than 26,001 pounds, but because of the towing capacity requirements, only drivers with a Class A CDL were permitted to drive an 18-wheel tractor trailer. In contrast, a Class B CDL licensed a driver to operate a straight truck or bus, but did not allow the driver to pull a tractor trailer.

5. A Class C California Driver License licensed a driver to operate a motor vehicle weighing less than 26,000 pounds, including ordinary passenger cars.

6. The issuance of a Class A, Class B, or Class C CDL affected interstate commerce in that, among other effects, the licenses enabled recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

7. To obtain a Class A or Class B CDL, an applicant was required to submit to the DMV a medical certification and pay an application fee, after which an electronic record was generated in the DMV's computer database for the applicant.

8. Thereafter, the applicant was required to pass one or more written examinations based on the type of license. The DMV administered written examinations at most DMV locations.

9. After an applicant passed the necessary written examinations for a Class A, Class B, or Class C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results. Passing the written portion of the examination would typically result in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

10. The behind-the-wheel driving examination was administered by a Licensing-Registration Examiner ("LRE") for the DMV. The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at select DMV locations in California, including Salinas, California. In contrast, the DMV typically administered behind-the-wheel driving examinations for a Class C general CDL available at most DMV locations.

11. After the applicant passed the requisite behind-the-wheel driving examination administered by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results. The DMV would then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered.

12. Thereafter, an official, hard plastic CDL was printed in Sacramento, California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

13. At all relevant times, EMMA KLEM was an employee of the DMV, and worked as a Motor Vehicle Representative in the DMV's office in Salinas, California. KLEM's job duties included, but were not limited to, the processing of CDLs and identification card applications including Class A and Class B commercial CDLs and Class C general CDLs, among other duties as assigned.

14. The objects of the aforementioned conspiracy were to provide payment of money to employees of the DMV in order to obtain CDLs for individuals who were not otherwise qualified to obtain the licenses, in violation of Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2),

and to produce identification documents without lawful authority, in violation of Title 18, United States Code section 1028(a)(1).

15.  The objects of the conspiracy were carried out, in substance, as follows:

   a.  In summary, beginning in at least June 2011, and continuing through at least April 2015, truck driving students and others (hereinafter collectively "students") were solicited by brokers (hereinafter "broker co-conspirators") to pay the broker co-conspirators money in exchange for obtaining for the students Class A, Class B, and Class C CDLs without the students having to take or pass the written and behind-the-wheel driving examinations.

   b.  The broker co-conspirators, in turn, paid or caused to be paid money to KLEM and other DMV employees (hereinafter "DMV co-conspirators") for KLEM and the other DMV co-conspirators to access and alter the students' electronic DMV records to incorrectly and fraudulently indicate that the students had passed examinations that, in truth and in fact, the students had not taken or passed, and which, therefore, caused DMV to issue CDLs to the students who had not completed the necessary requirements to receive such licenses.

   c.  From at least June 2013 through at least November 2014, EMMA KLEM and the DMV co-conspirators repeatedly accessed the DMV computer database and altered electronic DMV records to incorrectly and fraudulently indicate that the students had passed the behind-the-wheel driving examinations for Class A, Class B, and/or Class C CDLs when, in truth and in fact, the students had not taken or passed the behind-the-wheel driving examinations. KLEM and the other DMV co-conspirators also repeatedly accessed the DMV computer database and altered DMV records to incorrectly and fraudulently indicate that the students had passed the written examinations for Class A, Class B, and/or Class C CDLs when, in truth and in fact, the students had not taken or passed the written examinations.

16.  In furtherance of the conspiracy and to accomplish its objects, EMMA KLEM and others committed and caused to be committed the following overt acts, among others, in the State and Eastern District of California and elsewhere:

   a.  On or about June 18, 2013, EMMA KLEM, without authorization, altered the electronic DMV record for an individual (hereinafter "Person A") to incorrectly indicate that Person A

had taken and passed the behind-the-wheel driving examination for a Class A commercial CDL.

      b.    On or about June 20, 2013, an official, plastic hardcopy a Class A CDL for Person A was printed in Sacramento, California.

      c.    On or about June 26, 2013, Person A met with a broker co-conspirator and paid the broker-conspirator $5,000 in exchange for receipt of the Class A CDL.

      d.    In or around December 2013, another individual (hereinafter "Person D") paid $5,000 in two installments to a different broker-conspirator to obtain a Class A CDL for an associate of Person D (hereinafter "Person E").

      e.    On or about January 22, 2014, KLEM, without authorization, altered the electronic DMV record for Person E to incorrectly indicate that Person E had taken and passed the behind-the-wheel driving examination for a Class A CDL.

      f.    On or about January 24, 2014, an official, plastic hardcopy a Class A CDL for Person E was printed in Sacramento, California.

All in violation of Title 18, United States Code Section 371.

FORFEITURE ALLEGATION:    [18 U.S.C. §§ 982(a)(2), 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1.    Upon conviction of the offense alleged in Count One of the Information, defendant EMMA KLEM shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), § 982(a)(2)(B) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to a sum of money equal to the total amount of money involved in the offenses, for which the defendant is convicted.

2.    If any property subject to forfeiture, as a result of the offenses alleged in Count of this Information, for which the defendant is convicted:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value of the property subject to forfeiture.

Dated: July 20, 2015

BENJAMIN B. WAGNER
United States Attorney

By: /s/
TODD A. PICKLES
ROSANNE L. RUST
Assistant United States Attorneys

INFORMATION                          6

*United States v. Emma Klem*

**Penalties For Information**

| | |
|---|---|
| **COUNT 1:** | **EMMA KLEM** |
| VIOLATION: | 18 U.S.C. § 371 - Conspiracy to Commit Bribery and to Commit Identity Fraud |
| PENALTIES: | A maximum of 5 years of imprisonment; or<br>Fine of up to $250,000; or both fine and imprisonment<br>Supervised release of up to three years |
| FOREFEITURE: | As stated in information |
| SPECIAL ASSESSMENT: | $100 (mandatory on each count) |