BENJAMIN B. WAGNER
United States Attorney
TODD A. PICKLES
ROSANNE L. RUST
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America



FILED

AUG 11 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-00139 JAM |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| EMMA KLEM, | |
| Defendant. | |

## I.   INTRODUCTION

**A.   Scope of Agreement.**

The Information in this case charges the defendant Emma Klem (hereinafter "defendant") with Conspiracy to Commit Bribery and to Commit Identity Fraud in violation of Title 18, United States Code Section 371. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.   Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                          1

concerning the criminal activities of defendant, including activities which may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to the sole count in the Information, charging her with Conspiracy to Commit Bribery and Commit Identity Fraud, in violation of Title 18, United States Code Section 371. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

#### 1.   Waiver of Indictment:

The defendant acknowledges that under the United States Constitution she is entitled to be indicted by a grand jury on the charges to which she is pleading guilty and that pursuant to Fed. R. Crim. P. 7(b) she agrees to waive any and all rights she has to being prosecuted by way of indictment to the

charges set forth in the Information. The defendant agrees that at a time set by the Court, she will sign a written waiver of prosecution by Indictment and consent to proceed by Information rather than by Indictment.

**B.     Remand.**

The defendant acknowledges that she may be remanded into custody upon the entry of her plea unless, pursuant to 18 U.S.C. § 3143(a)(1), the Court finds by clear and convincing evidence that she is not likely to flee or pose a danger to the safety of any other person or the community. The United States does not oppose the defendant remaining out of custody until the date of her judgment and sentencing provided she does not violate any federal, state, or local laws.

**C.     Restitution.**

The defendant agrees to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) to the California Department of Motor Vehicles and to any person who has been injured or who has suffered property damage as the result of the criminal conduct set forth in this plea agreement and the factual basis of the agreement, including but not limited to the issuance of California driver licenses to individuals who did not pass the requisite examinations for issuance of the licenses. Defendant further agrees that she will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding. Payment of restitution shall be by cashier's or certified check made payable to the Clerk of the Court.

**D.     Fine.**

The defendant agrees to pay a fine if ordered by the Court.

**E.     Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, she agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

PLEA AGREEMENT                                     3

F. **Violation of Plea Agreement by Defendant/Withdrawal of Plea.**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a cooperating defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement will be under a probable cause standard.

If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea, the government shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### G. Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time.

### III. THE GOVERNMENT'S OBLIGATIONS

### A. Recommendations.

#### 1. Incarceration Range.

The government will recommend that the defendant be sentenced at the low-end of the applicable guideline range provided that the range is no less than a total offense level of 23. If the total offense level is less than 23, the government will recommend that the defendant be sentenced within the applicable guideline range as determined by the Court.

#### 2. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### B. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

Further, other than as set forth above, the government agrees that any incriminating information provided by the defendant during her cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8, unless the information is used to respond to representations made to the Court by the defendant, or on her behalf, that contradict information provided by the defendant during her cooperation.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty, that is Conspiracy to Commit Bribery and to Commit Identity Fraud, in violation of Title 18, United States Code Section 371:

First, beginning no later than May 2013, and continuing through at least March 2015, there was an agreement between two or more persons to commit at least one crime as charged in the Information, that is Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2), and Identity Fraud, in violation of Title 18, United States Code section 1028(a)(1);

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

///

///

///

PLEA AGREEMENT                               6

1    With respect to the objects of the conspiracy, the elements are as follows:

2    For <u>Bribery Concerning Programs Receiving Federal Funds</u>, in violation of Title 18, United
3    States Code sections 666(a)(1)(B), the elements are as follows:

4    First, at the times alleged in the Information, the defendant was an agent of the California
5    Department of Motor Vehicles;

6    Second, at the times alleged in the Information, the Department of Motor Vehicles
7    received federal benefits in excess of $10,000;

8    Third, the defendant accepted and agreed to accept something of value from one or more
9    persons;

10   Fourth, the defendant acted corruptly with the intent to be influenced or rewarded in
11   connection with the business and series of transactions of the Department of Motor Vehicles; and

12   Fifth, the value of the business and series of transactions to which the payment was
13   related—to wit, California driver licenses—was at least $5,000.

14   As used herein, a "thing of value" may be tangible property, intangible property, or
15   services, so long as it has value.

16   For <u>Bribery Concerning Programs Receiving Federal Funds</u>, in violation of Title 18, United
17   States Code sections 666(a)(2), the elements are as follows:

18   First, at the times alleged in the Information, the defendant was an agent of the California
19   Department of Motor Vehicles;

20   Second, at the times alleged in the Information, the Department of Motor Vehicles
21   received federal benefits in excess of $10,000;

22   Third, one or more persons gave or offered something of value to the defendant;

23   Fourth, the person or persons who gave or offered something of value to the defendant
24   acted corruptly with the intent to influence or reward the defendant in connection with the business and
25   series of transactions of the Department of Motor Vehicles; and

26   Fifth, the value of the business and series of transactions to which the payment was
27   related—to wit, California driver licenses—was at least $5,000.

28

PLEA AGREEMENT                                         7

For <u>Identity Fraud</u>, in violation of Title 18, United States Code section 1028(a)(1), the elements are as follows:

    First, the defendant knowingly produced an identification document;

    Second, the defendant produced the identification document without lawful authority; and

    Third, the identification document (a) was to be issued by or under the authority of the State of California, or a political subdivision of the State, (b) was in or affected commerce between one state and other states; or (c) in the course of production, the identification document was transported in the mail.

    As used herein, an "identification document" means a document made or issued by or under the authority of the State of California or political subdivision of the State, that, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals. 18 U.S.C. § 1028(d)(3).

The defendant fully understands the nature and elements of the crimes charged in the Information to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V. MAXIMUM SENTENCE

### A. Maximum Penalty.

The maximum sentence that the Court can impose is five years of incarceration, a fine of $250,000.00, a three-year period of supervised release and a special assessment of $100.00. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

B. **Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two additional years imprisonment.

## VI.   SENTENCING DETERMINATION

A. **Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Stipulations Affecting Guideline Calculation:**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

   1. Grouping for Multiple Objects of Conspiracy

Under U.S.S.G. § 1B1.2(d), where a defendant is convicted of a multi-object conspiracy, the guidelines are calculated as if the defendant was convicted on a separate count for each object, unless the objects are grouped under U.S.S.G. § 3D1.2. *See* U.S.S.G. § 1B1.1.2, Appl. Note 4. Because the objects of the conspiracy to which the defendant is pleading guilty—bribery and identity fraud—are grouped under U.S.S.G. § 3D1.2(d), the offense level is determined by the offense guideline that produces the highest offense level. U.S.S.G. § 3D1.3(b). The parties estimate that the highest offense level under the guidelines is under U.S.S.G. § 2C1.1 with respect to Bribery Concerning Programs Receiving Federal Funds, in violation of Title 18, United States Code sections 666(a)(1)(B) & 666(a)(2).

Accordingly, the parties estimate that the offense guideline under U.S.S.G. § 2C1.1 will be used to determine the offense level for Conspiracy To Commit Bribery and to Commit Identity Fraud, in violation of Title 18, United States Code Section 371.

  2. <u>Base Offense Level</u>: **14**

  The parties agree that defendant was a public official. U.S.S.G. § 2C1.1(a); U.S.S.G. § 2C1.1, Appl. Note 1(C).

  3. <u>Multiple Bribes</u>: **+2**

  The parties agree that defendant was paid and received more than one bribe in connection with the offense conduct. U.S.S.G. § 2C1.1(b)(1).

  4. <u>Value of Benefit Received In Return for Bribe</u>: **+4/+12**

  The parties agree that the value of the benefit received in return for payment with respect to the defendant's own conduct within the conspiracy is no less than $20,000 and no greater than $400,000. Accordingly, the parties estimate that, under the current version of the guidelines, the base offense level is increased by no less than 4 and no greater than 12 levels. U.S.S.G. § 2C1.1(b)(2); U.S.S.G. § 2B1.1(b)(1)(C)-(G); U.S.S.G. § 2C1.1, Appl. Note 3.

  5. <u>Government Identification Document</u>: **+2**

  The parties agree that defendant, as a public official, facilitated others in obtaining a government identification document, to wit, a California issued driver license. U.S.S.G. § 2C1.1(b)(4); U.S.S.G. § 2C1.1, Appl. Note. 1.

  6. <u>Role in the Offense Adjustment</u>: **0/-2**

  The defendant is permitted to argue for up to a two-level minor participant mitigating role adjustment under U.S.S.G. § 3B1.2(b). The United States may oppose any such argument. The parties agree that the defendant is not to minimal participant mitigating role adjustment and the United States shall not argue for an aggravating role adjustment under U.S.S.G. § 3B1.1.

  7. <u>Acceptance of Responsibility</u>: **-3**

  See paragraph III.A.2 above

8. <u>Criminal History</u>:   **No Agreement**

The parties do not have any agreements as to the defendant's criminal history. The defendant is permitted to object or otherwise challenge any criminal history calculations determined by the Probation Officer and she preserves the right to argue that her criminal history category substantially over-represents the seriousness of her criminal history under U.S.S.G. § 4A1.3(b). For its part, the government is permitted to argue in support of any such calculations by the Probation Officer.

9. <u>Departures or Other Enhancements or Reductions</u>:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1), post-plea obstruction of justice (§3C1.1), or as provided under U.S.S.G. § 2C1.1, Appl. Note 7. The defendant may make any argument for departure from the Sentencing Guidelines and the United States may oppose.

The defendant is free to recommend to the Court whatever sentence she believes is appropriate under 18 U.S.C. § 3553(a). The government reserves the right to oppose any variance under 18 U.S.C. § 3553(a).

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum for the offense to which she is pleading guilty. The defendant

specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

If the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in Section II.F, herein.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel.

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 8/10/15

HEATHER WILLIAMS
Federal Public Defender

_/s/ Benjamin Galloway_
BENJAMIN GALLOWAY
Assistant Federal Defender

Attorney for Defendant

### B. Defendant:

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 8/10/15

_/s/ Emma Klem_
EMMA KLEM
Defendant

### C. Attorney for United States:

I accept and agree to this plea agreement on behalf of the government.

Dated: 8/11/2015

BENJAMIN B. WAGNER
United States Attorney

_/s/ Todd A. Pickles_
TODD A. PICKLES
ROSANNE L. RUST
Assistant United States Attorneys

PLEA AGREEMENT                               13

# EXHIBIT "A"

## Factual Basis for Plea

The defendant Emma Klem has worked at the California Department of Motor Vehicles ("DMV") since 2000. Klem is currently a Motor Vehicle Representative ("MVR") assigned to the Salinas field office. Klem was a MVR between 2011 and 2014. As a MVR, Klem's job responsibilities at DMV included, but were not limited to, the processing of Class A and Class B commercial and Class C general driver licenses.

The California DMV is a political subdivision and agency of the State of California that registers vehicles in California and licenses California drivers. The DMV also issues identification cards for individuals in California. The DMV is funded by vehicle registration and licensing fees paid by residents and licensees of the State of California. The DMV also received federal grants, including the following grant money for the following fiscal years (July 1 through June 30): $2,500,000 for fiscal year 2011-2012; $726,000 for 2012-2013; $4,000,000 for fiscal 2013-2014; and $800,000 for fiscal year 2014-2015.

The California DMV issues different classes of driver licenses ("CDLs"), including Class A and Class B commercial licenses and Class C general licenses. The issuance of a Class A, Class B, or Class C CDL affects interstate commerce in that, among other effects, the licenses enable recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

At all relevant times between 2011 and 2014, in order to obtain a CDL, an applicant was required to pay an application fee, after which an electronic record was generated in the DMV's computer database for the applicant. Thereafter, the applicant was required to pass one or more written examinations based on the type of license. The DMV administered written examinations at most DMV locations. After an individual passed the necessary written examinations for a Class A, Class B, or Class C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results. Passing the written portion of the examination would typically result in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

The behind-the-wheel driving test was administered by a Licensing-Registration Examiner ("LRE") for the DMV. The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at select DMV locations in California, including Salinas, California. In contrast, the DMV typically administered behind-the-wheel driving examinations for a Class C general CDL available at most DMV locations. After the applicant passed the requisite behind-the-wheel driving examination administered by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results. The DMV would then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered. Thereafter, an official, hard plastic CDL was printed in Sacramento, California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

Beginning in 2011, the Federal Bureau of Investigation ("FBI") began an investigation involving individuals in the Sacramento area being offered the opportunity to obtain commercial CDLs without having to take the written or behind-the-wheel driving examinations in exchange for the payment of money. Through the course of the investigation, an FBI confidential source ("CS") paid $2,000 to a Sacramento-area broker for CDLs to have a DMV employee access the DMV database and alter the records to show that the FBI CS had passed the written examination for a Class A CDL. Thereafter, the FBI CS was introduced by the broker to Kulwinder Dosanjh Singh (hereinafter "Kulwinder Dosanjh"), charged elsewhere in *United States v. Kulwinder Dosanjh Singh*, 2:15-cr-146 JAM. Kulwinder Dosanjh owned and operated a truck-driving school in Turlock, California. Kulwinder Dosanjh told the FBI CS that in exchange for $5,000 he could get the behind-the-wheel driving examination for a Class A CDL passed for the FBI CS without the FBI CS needing to take the examination.

PLEA AGREEMENT          A-1

Separate from the FBI investigation, beginning in 2012, the Department of Homeland Security, Homeland Security Investigations ("HSI") began a separate investigation involving individuals in the Stockton area being offered the opportunity to obtain commercial CDLs without having to take the written or behind-the-wheel driving examinations in exchange for the payment of money. Through the course of the investigation, HSI identified Mangal Gill, charged elsewhere in *United States v. Kimura, et al.*, 2:15-cr-00161 KJM, as a person who has been a broker for CDLs and who operated trucking schools in Fremont, Lathrop, Fresno, and Salinas, California. Beginning at least in 2012, and continuing through 2015, Gill offered to individuals that he could obtain for them a Class A or Class B CDL without those individuals taking or passing the written or behind-the-wheel driving examinations in exchange for payment. On various dates in 2013 and 2014, HSI agents, including through the use of confidential informants or undercover agents, paid Gill money to obtain commercial CDLs, including on one occasion $5,000 to obtain a Class A commercial CDL, for which the HSI confidential informant had not taken or passed either the written or behind-the-wheel driving examinations.

The DMV-Office of Internal Affairs ("OIA") provided assistance to both investigations.

Beginning no later than May 2013, Klem was approached by Gill, who requested that Klem access DMV's computer database and alter applicants' electronic DMV records to falsely indicate that applicants had passed the written and/or behind-the-wheel driving examinations for Class A and Class B commercial CDLs. Klem agreed to access and alter the DMV electronic records as requested by Gill. In return, Gill offered to give Klem money in connection with her accessing and altering DMV records to falsely indicate that applicants had passed the examinations. Klem agreed and did, in fact, receive money from Gill.

An analysis of telephone records for Gill and Klem demonstrated that Gill was in contact with Klem in relation to the instances when Gill received payment from HSI agents to obtain commercial CDLs without the confidential sources taking or passing any written or behind-the-wheel driving examinations. These included calls on or about the dates when Klem accessed DMV records to falsely indicate that the HSI confidential informants had passed the written or behind-the-wheel driving examinations when, in truth and in fact, the HSI confidential informants had not taken or passed the examinations.

On or about April 1, 2015, HSI agents executed search warrants for Klem's and Gill's phones, among other items. A forensic analysis of the phones revealed telephone calls and text messages between Klem and Gill, including as late as March 31, 2015, discussing Klem accessing applicants' records for Gill. More than 20 CDL numbers were referenced in text messages between Gill and Klem. For his part, Gill's phone revealed almost 50 CDLs referenced in text messages with another DMV employee Robert Turchin, charged elsewhere in *United States v. Kimura, et al.*, 2:15-cr-00161 KJM. An analysis of DMV records indicated that many of the CDL's referenced in the text messages had the written and/or behind-the-wheel driving examinations passed in the DMV records by Klem, Turchin, and other DMV employees. At the time of the search warrant Klem admitted to accessing and altering DMV records.

Also on or about April 1, 2015, FBI agents executed search warrants for Kulwinder Dosanjh's phone, among items. Kulwinder Dosanjh's phone contained references to dozens of CDLs, including in text messages to Gill. One of the CDL numbers that was referenced in a text message between Gill and Kulwinder Dosanjh was for the FBI CS. (As discussed next, Klem accessed the DMV database for the FBI CS's record and altered it to fraudulently show he passed the driving examination.) Kulwinder Dosanjh admitted at the time of the search warrant that he knew Gill.

In furtherance of the foregoing conspiracy, on or about April 11, 2013, an FBI CS (hereinafter Person A) met with Kulwinder Dosanjh and paid him $5,000 to obtain a Class A CDL without having to take the behind-the-wheel driving examination. In May 2013, Kulwinder Dosanjh returned the money to Person A and told Person A that Kulwinder Dosanjh's DMV contact was having trouble processing

PLEA AGREEMENT                                     A-2

the CDL. Kulwinder Dosanjh told Person A that once the CDL was issued Person A would then pay Kulwinder Dosanjh $5,000.

Based on analysis of DMV records by DMV-OIA, on or about June 18, 2013, Klem, without authorization, altered the electronic DMV record for an individual to incorrectly indicate that Person A had taken and passed the behind-the-wheel driving examination for a Class A commercial CDL. The records identified Turchin as the LRE. On or about June 20, 2013, an official, plastic hardcopy Class A CDL for Person A was printed in Sacramento, California. On or about June 26, 2013, Person A met with Kulwinder Dosanjh, and paid Kulwinder Dosanjh $5,000 in exchange for receipt of the Class A CDL. At no point did Person A ever take or pass the behind-the-wheel test for the Class A CDL, including any administered by Turchin as the LRE.

In or around December 2013, an HSI CS paid $5,000 in two installments to Gill to obtain a Class A CDL for an associate of the HSI CS (hereinafter Person E). On or about January 22, 2014, Klem, without authorization, altered the electronic DMV record for Person E to incorrectly indicate that Person E had taken and passed the behind-the-wheel driving examination for a Class A CDL. Turchin was also listed as the LRE. At no point did Person E ever take or pass any behind-the-wheel driving examination, including any administered by Turchin as the LRE. On or about January 24, 2014, an official, plastic hardcopy Class A CDL for Person E was printed in Sacramento, California.

The FBI/HSI/DMV-OIA investigation has revealed no less than 20 CDLs that were issued by DMV in which Klem accessed and altered, or caused or aided and abetted other DMV employees to access and alter applicants' DMV electronic records to falsely indicate that the applicants had passed the written or behind-the-wheel driving examinations.

As part of this agreement, the defendant Emma Klem admits that, beginning not later than May 2013 and continuing through at least March 2015, she knowingly and intentionally conspired with others to commit bribery and to commit identity fraud with respect to the production of California driver licenses.

The conduct set forth above is not meant to be exhaustive and is merely an example of Klem's conduct in furtherance of the conspiracy to commit bribery and to commit identity fraud.

I have reviewed the entire factual basis in Exhibit A above and, as far as my own conduct is concerned, I adopt it as my own true statement.

DATED: 8/10/15

EMMA KLEM, Defendant